## HUGGETT v. BURNET, Commissioner of Internal Revenue.

### No. 5691.

Court of Appeals of the District of Columbia.

Argued March 8, 1933.

Decided April 3, 1933.

James Craig Peacock, of Washington, D. C., for appellant.

G. A. Youngquist, Sewall Key, Helen R. Carloss, C. M. Charest, and Bruce A. Low, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This appeal involves deficiencies of income taxes for the calendar years 1925 and 1926. Appellant and his wife filed joint returns for those years. The income involved in this proceeding is that of the wife.

The wife's grandmother, Margaret H. Eaton, a resident of Pennsylvania, died testate on December 22, 1912, and her last will and testament was admitted to probate and her estate was administered in Pennsylvania. At the time of her death she was the owner of various corporate stocks and bonds, among which were certain shares of Oil Well Supply Company stock. The executor appointed by the will was directed to hold, sell, or exchange all stock, bonds, and interests which the testatrix owned at the time of her death, with power to sell and dispose of them in whole or in part, and reinvest the proceeds, and to collect the income therefrom and distribute the proceeds and corpus of all such assets under the following provisions of the will, to wit:

"The one-half part of said income shall be paid by my executor to my daughter, Mabel Denys, during her lifetime; the other one-half part of said income shall be paid by my executor to my daughter, Lulu Eaton Brown, during her lifetime. At the death of my daughter, Mabel Denys, I give, devise, and bequeath the one-half part of my estate to my granddaughters, Dorothy Denys,

Gwendoline Denys, Muriel Denys, and Margaret Denys, daughters of Mabel Denys, share and share alike, their heirs and assigns forever."

One of the two life tenants, namely, the daughter, Mabel Denys, who was the mother of Mrs. Huggett, died May 15, 1924, and after her death securities constituting one-half part of the estate were distributed in specie by the executor to her daughters in conformity with the foregoing provisions. In the distribution Mrs. Huggett, who is named as Muriel Denys in the will, received fifty shares of stock of the Oil Well Supply Company, which were a part of the testatrix's estate at the time of her death. In the year 1925 Mrs. Huggett sold part of the shares thus received by her (changed in form only) for the sum of $28,688.28, and in 1926 she sold the remaining shares for the sum of $26,481.47. On December 22, 1912, the date of testatrix's death, and also on March 1, 1913, the stock of the Oil Well Supply Company possessed a fair market value of $465.90 a share. Its fair market value on May 15, 1924, at which time the life tenant died, was $1,065.59 a share. The market value of the shares on March 1, 1912, less the value of the estate of the life tenant therein, computed according to mortality tables, was $195.45 a share.

In the income tax returns filed for the years 1925 and 1926 by appellant and his wife no gain in respect to the several sales of the Oil Well Supply Company stock was reported. The Commissioner of Internal Revenue, however, determined a taxable gain of $16,543.58 as realized from the sale made in 1925, and a taxable gain of $16,515.59 as realized from the 1926 sale. In the determination of such gains the Commissioner used as a basis of computation the value of the stock as of March 1, 1913, in the sum of $465.90 per share. While the case was pending before the Board, however, and after the Commissioner had filed his answer to appellant's petition, the Commissioner by leave of the Board amended his answer and alleged that the basis of value should be the market value of the stock on March 1, 1913, less the value of the estate of the life tenant in such stock, to wit, the net sum of $195.45 per share. The Commissioner thereupon increased the deficiencies accordingly.

Section 204(a) (5) of the Revenue Act of 1926, 26 USCA § 935(a) (5) provides that the basis for determining the gain or loss from the sale of property acquired by bequest, devise, or inheritance shall be "the fair market value of such property at the time of such acquisition," subject to the qualification in section 204 (b), 26 USCA § 935 (b) that if the property was so acquired prior to March 1, 1913, the basis shall be the fair market value of the property when so acquired or its fair market value as of March 1, 1913, whichever is greater.

It is claimed by appellant that Mrs. Huggett "acquired" the original fifty shares of Oil Well Supply Company stock upon the death of her mother, the life tenant, and the consequent termination of the latter's life interest therein, and the value of the stock as of that date should be taken as the basic value for the determination of gains or losses.

The present issue therefore is whether the basic value for the determination of gains from the sales in question is (a) the full market value of the shares on March 1, 1913, or (b) the market value of the stock on March 1, 1913, after deducting therefrom the value of the life estate of the life tenant, or (c) the market value of the stock at the time of the death of the life tenant.

The Board of Tax Appeals fully sustained the contention of the commissioner, five members of the Board, however, dissenting. Accordingly the deficiencies were computed by taking the market value of the fifty shares on March 1, 1913, less the value of the life tenant's estate or interest therein at that time, and deducting the same from the selling price of the stock. The present appeal is taken from that decision.

▮▮ We are of the opinion that Mrs. Huggett acquired a vested remainder in the stock by the bequest in her grandmother's will at the date of the testatrix's death. In the case of Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 117, 74 L. Ed. 457, it is held that the basis of calculation in the case of stocks acquired by the taxpayer as a residuary legatee and sold by him, is not their value at the date of the decree of distribution, but their value at the date of the testator's death. We regard this authority as conclusive of that issue, notwithstanding the fact that there was no life estate provided for in the case. It is noted in the opinion of the court that "Treasury Regulations under the Revenue Acts in force between 1917 and 1928 declared that value at time of the death of decedent should be taken as the basis for ascertaining profit or loss from sale of property acquired by bequest or descent since February 28, 1913. * * * The meaning of 'acquired' in section 202 (a) of the Act of 1918 was not changed by and in context means the same as does the phrase 'time of such acquisition' in

the corresponding provision of the Act of 1921. And that phrase was continued in section 204(a) (5) of the Revenue Acts of 1924 and 1926. * * * The regulations promulgated under that section are substantially the same as the earlier regulations."

The facts in the instant case are substantially identical with those in Rodman E. Griscom, Petitioner, v. Commissioner of Internal Revenue, 22 B. T. A. 979, in which the Board of Tax Appeals reached the conclusion as in this case that March 1, 1913, should be taken as the date of the basic valuation. We agree with the Board in denying appellant's contention that the basis of the determination of gain should be the market value of the property at the death of the life tenant.

It is our opinion, however, that the Board erred in deducting from the basic value of the property on March 1, 1913, the value of the estate of the life tenant imposed upon it by the will. The testatrix in the present case bequeathed the entire ownership of the shares of stock in question to Mrs. Huggett, although the date of possession of the same was deferred for an uncertain period. The acquisition of the property at the date of possession relates back to the date of the testatrix's death. The statute speaks of the value of the property which is acquired by the legatee, and in this case the property consisted of the shares of stock. Should the property devised or bequeathed by the will be subject to a mortgage indebtedness, or to the payment of a legacy to another person, or to a continuing charge provided by the will, it is not designed that a computation should be made of the value of these encumbrances in order to determine the value of the property as such devised by the will. The view which we thus adopt is that which the Board of Tax Appeals adopted in the Griscom Case, supra. In that case the Board said:

"Having established March 1, 1913, as the basic date, because value at that time is stipulated to be greater than value at the time of testator's death, we must next determine whether the value of the securities themselves, or the value of petitioner's vested remainder interest therein, since they formed a part of the trust corpus, should be used as the basis in computing gain or loss. Respondent contends that the stipulated value of petitioner's remainder interest should be used as a basis, but with this contention we are unable to agree for the reasons hereinafter set forth.

"In the first place, it is perfectly clear that during the period of the life estate petitioner held steadfastly to his remainder interest, and, so far as the record is concerned, never at any time entertained a thought of selling such interest. Obviously, if he had sold his interest, the value thereof would be the proper basis for computing gain or loss. But he did not sell an interest. He sold the fee simple title to the securities themselves, and if due weight is to be given to the Supreme Court's opinion in Brewster v. Gage, supra, then his title to the things sold, namely, the securities, must relate back to November 10, 1912. Therefore, the value of the securities on March 1, 1913, is the basis to be used in computing gain or loss on the subsequent sales."

The Board has overruled this decision in its present opinion, but we think the former ruling was correct, and that the determination of gain in the present case should be measured by the difference between the value of the property as such on March 1, 1913, and the price at which the property was afterwards sold in the years 1925 and 1926. The decision of the Board is therefore modified in this particular and otherwise affirmed, and the cause is remanded for further proceedings not inconsistent herewith.